UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARLENE CARVER,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ] |
| | ]   CV-03-BE-2808-S |
| **CONTINENTAL CASUALTY** | ] |
| **COMPANY; CNA GROUP LIFE** | ] |
| **ASSURANCE CO.,** | ] |
| | ] |
| **Defendants.** | |

<u>MEMORANDUM OPINION</u>

### I.  INTRODUCTION

This case is before the court on Plaintiff's Motion for Summary Judgment (doc. 19) and Defendants' Cross-Motion for Summary Judgment (doc. 25). For the reasons set forth below, the court finds that Plaintiff's Motion is due to be **DENIED** and Defendants' Cross-Motion is due to be **GRANTED in part and DENIED in part**.

Specifically, Defendants' request that the set off provision apply to the payment of long term disability benefits is **GRANTED**. Defendants' request to dismiss Plaintiff's claim for "any occupation" disability to give Defendants an opportunity to evaluate that claim in the event the court determines Plaintiff is due disability insurance benefits is **GRANTED**. Defendants' request to deny Plaintiff's claim for attorney fees as a matter of law is **DENIED**.

### BACKGROUND

Plaintiff Marlene Carver worked as a retail sales manager for the Estee Lauder Corporation. As part of her employee benefit plan, Plaintiff was covered by a disability

insurance policy issued by Defendants. At all times relevant to this lawsuit, Continental was the insurer and claims administrator under the terms of the policy.

Estee Lauder's employee handbook states that, before receiving long term benefits pursuant to this policy, an elimination period must expire. The elimination period refers to "the number of days at the beginning of a continuous period of Disability for which no benefits are payable." After the elimination period and for the next twenty-four months, the long term disability policy defines "disability" to mean that

> the Insured Employee, because of Injury or Sickness is:
> (1) continuously unable to perform the substantial and material duties of the Insured Employee's *regular* occupation;
> (2) under the regular care of a licensed physician other than the Insured Employee; and
> (3) not gainfully employed in any occupation for which the Insured Employee is or becomes qualified by education, training or experience.[1]

After the first twenty-four months of long term disability payments under the "own occupation" standard, the definition of disability changes to the "any occupation" definition which provides:

> Total Disability means that, because of injury or sickness, you are unable to perform the substantial and material duties of *any* occupation for which you are or may reasonably become qualified based on your training, education or experience. You must remain under the care of a licensed physician other than yourself.[2]

The policy also provides a set-off for disability income available from other sources. The employee handbook provision (which summarizes the set-off provision contained in the actual policy) reads as follows:

---

[1] The Policy at 21.

[2] *Id*. at 45. *See* Ex. A, Sauerhoff Decl. at ¶ 3, n. 1 (emphasis added).

> Under current Social Security laws, you may be eligible for Social Security benefits if you are disabled for five consecutive months and it is anticipated that your disabling condition will last at least a year....Your spouse and dependent children may also be eligible to receive Social Security benefits if you are disabled.
>
> You must make every reasonable effort to receive your Social Security disability benefits.  This includes filing appeals for any denied claims.  If you fail to do so, your LTD benefits will be reduced by the estimated amount of Social Security benefits you could have received, whether or not you applied for them.
>
> LTD benefits will be reduced by your initial Social Security disability benefit (including any amounts that your dependents may qualify for).

Subsequent to the issuance of this policy, Plaintiff had surgery on her left foot.  From February 8 until July 31, 2002, she received short term disability benefits while she was recuperating.

Upon the expiration of her short term benefits, Plaintiff applied for long term disability benefits.  On October 4, 2002, Continental denied Plaintiff's claim for benefits after concluding that Plaintiff could perform the material and substantial duties of her occupation as a retail store manager.  Plaintiff appealed this decision, and was again denied long term benefits by Continental's Appeals Committee on January 10, 2003.  Thereafter, Plaintiff filed this lawsuit.

## II.  STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases where no genuine issues of material fact are present.  *See* Fed. R. Civ. P. 56.  A court must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  *Id*.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on [his] pleadings." *Id*.

In reviewing the evidence submitted, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### III. DISCUSSION

**A. The ERISA standard of review.**

ERISA provides no standards for evaluating plan administrator's determinations. *See FireStone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). But the Eleventh Circuit

has established three standards for reviewing such decisions: "(1) *de novo* where the plan does not grant the administrator discretion[;] (2) arbitrary and capricious [where] the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest." *HCA Health Svcs. Of Ga., Inc., v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir. 2001) (quoting *Buckley v. Metropolitan Life*, 115 F.3d 936, 939 (11th Cir. 1997)).

In *Williams v. BellSouth Telecommunications, Inc.*, the Eleventh Circuit articulated a multi-step approach for reviewing "virtually *all* ERISA-plan benefit denials..." 373 F.3d 1132, 1137 (11th Cir. 2004) (citing *HCA Health Svcs.*, 240 F.3d at 993-95.)  This approach applies to denials based on plan interpretation as well as on factual determinations. *Williams*, 373 F.3d at 1137, n. 6.  The steps are as follows:

1. "Apply the *de novo* standard to determine whether the claim administrator's benefits denial [or plan interpretation] is 'wrong' (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision." *Williams*, 373 F.3d at 1138; *see HCA Health Svcs.*, 240 F.3d at 993 (applying this step when analyzing a claims manager's plan interpretation).

2. "If the administrator's decision in fact is '*de novo* wrong' then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision." *Williams*, 373 F.3d at 1138.

3. "If the administrator's decision is '*de novo* wrong' and he *was* vested with discretion in reviewing claims, then determine whether 'reasonable' grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard)." *Id.*; *see also Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997) (stating that "[a] decision to deny benefits

is arbitrary and capricious if no reasonable basis exists for the decision"); *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1451 (11th Cir. 1997) (noting that "where the plan affords the administrator, discretion, the administrator's fact-based determinations will not be disturbed if reasonably based on the information known at the time the decision was made.")

    4. "If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest." *Williams*, 373 F.3d at 1138.

    5. "If there is no conflict, then end the inquiry and affirm the decision." *Id*.

    6. "If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it." *Id*.

With respect to the heightened arbitrary and capricious review in step 6 of this analysis, the Eleventh Circuit has described this standard "as somewhere between the de novo and 'mere' arbitrary and capricious standards." *Id*. (noting that the Supreme Court has not explained this standard).

In *plan interpretation* cases (i.e., interpreting policy provisions), the Eleventh Circuit utilizes a burden shifting approach whereby "(1) [t]he claimant shows that the administrator of a discretion-vesting plan is conflicted [and] (2) [t]he administrator then proves that his plan interpretation was not tainted by self-interest." *Id*., citing *Brown v. Blue Cross & Blue Shield of Ala.*, 898 F.2d 1556, 1566 (11th Cir. 1990). The Eleventh Circuit further noted that

> [a] wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the administrator at the expense of the claimant. But, if the administrator can demonstrate a routine practice or give other plausible justifications – such as benefitting the interests of other beneficiaries – judicial deference to it may be granted, since "[e]ven a conflicted

> [administrator] should receive deference when [he] demonstrates that [he] is exercising discretion among choices which reasonably may be considered to be in the interests of the participants and beneficiaries.

*Williams*, 373 F.3d at 1138, quoting *Brown v. Blue Cross & Blue Shield of Alabama*, 898 F.2d 1556, 1566-67 (11th Cir. 1990).  The Eleventh Circuit has applied the heightened arbitrary and capricious burden shifting methodology to plan interpretation cases, but has never specifically applied it to factual determination cases involving the denial of ERISA benefits.  *Williams*, 373 F.3d at 1139.  However, the court in *Williams* indicated that this methodology would apply to factual determination cases in the future.  *Id*. (proffering the burden shifting framework "to assist future determinations").

   **B.  Plaintiff's Motion for Summary Judgment.**

   Plaintiff essentially argues that Defendants unreasonably denied Plaintiff's benefits and, therefore, acted in an arbitrary and capricious manner in violation of ERISA.  Plaintiff supports this argument with medical evidence of her total disability, as well as her doctor's notes stating that she was restricted from prolonged sitting and lifting, and had no "return to work date" since she was incapacitated by leg pain.  However, applying the Eleventh Circuit's multi-step approach for reviewing factual determination, a disputed issue of fact exists as to the first and third prongs.

   The record shows that on four different occasions Defendants contacted either Plaintiff or Plaintiff's doctor and requested medical documentation to verify Plaintiff's claim.  Defendants received three pages of almost illegible doctor's notes covering the period from June 19 through September 18, 2002, as well as the aforementioned note stating Plaintiff had no "return to work date."  Under these facts, a fact finder could determine that Defendant's decision was not "wrong" or "unreasonable" based on (1) the medical evidence available; and (2) the fact that

Defendant repeatedly requested additional information from Plaintiff and her doctor. Alternatively, a fact finder might determine that the physician's notes and statements constituted sufficient evidence that Plaintiff was totally disabled. Consequently, the first and third prongs of the multi-step approach indicate a disputed issue of fact exists as to whether Defendants' decision to deny benefits was "wrong" or whether it was supported by "reasonable" grounds.

As further support for her claim that Defendants violated ERISA, Plaintiff cites ERISA as mandating a "reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133 (2005). Plaintiff argues that the review of her disability claim during the appeals process was either not meaningful or not conducted at all, thereby constituting a breach of Defendants' fiduciary duty. In support of this contention, Plaintiff produced an internal appeals note written by Defendants' employee Tonya Williams.[3] The internal appeals note states:

> 12/6/02. Rec'd appeal letter from client.
> 12/16/02. Restrictions on prolonged standing and no lifting are not medically supported-no medical evidence was provided to support a continuing disability. Initial claim decision remains. File referred for formal appeal review.
> Letter of notification sent to [illegible].[4]

Plaintiff claims that this note effectively constituted the "review" of her claim, that the appeal of her claim was conducted by the same individual who denied it initially, and, therefore, it was not a meaningful review.

---

[3] Ms. Williams was the individual who sent Plaintiff the October 4, 2002 letter denying Plaintiff's first claim for long term benefits.

[4] Ex. 2, p. 00153

8

However, the court determines that a reasonable fact finder could conclude from the note's plain language that this note did not constitute an appellate review of Plaintiff's claim. Additionally, a letter in the record from an Appeals Committee Member (Ms. Nancy Deskins) to Ms. AnneMarie Schiffino states that "[w]e have completed a review of the appeal...and we have upheld the denial of long-term disability benefits."[5] At the very least, a disputed issue of fact exists as to whether the appellate review of the claim was legitimate; accordingly, summary judgment should be denied.

Plaintiff finally requests attorney's fees for the costs associated with filing her Motion for Summary Judgment. Because genuine issues of fact preclude granting Plaintiff's Motion, an award of attorney's fees at this point in the litigation would be premature. The court may re-visit this issue in the event Plaintiff prevails at trial.

### C. Defendants' Cross-Motion for Summary Judgment.

Defendants claim that the set-off provision contained in both the policy and the employee handbook clearly indicates that the amount of long term benefits paid to a disabled beneficiary "shall be reduced by disability benefits paid, payable, or for which there is a right under...[t]he Social Security Act."[6] Plaintiff argues first that the set-off provision is contained only in the employee handbook and not in the policy itself. This argument is erroneous, as evidenced by the contract on the record produced by Continental. Plaintiff next argues that nothing on the record shows Defendants ever questioned Plaintiff's efforts to receive Social Security benefits, and Defendants never considered this relevant when Defendants were paying benefits from February

---

[5] Id., p. 00152.

[6] Ex. 1, p. 00015.

through July 2002. However, the fact that Defendants never considered the set-off while they paid from February through July 2002 does not help Plaintiff because those benefits were short term benefits, and the set-off provision cited only applies to long term benefits.[7]

Plaintiff finally argues that, since Defendant never raised the set-off provision when it initially denied Plaintiff's benefits, it should be precluded from raising it after the administrative appeals process was over. *See Glista v. Unum Life Ins. Co.*, 378 F.3d 113, 128-29 (1st Cir. 2004) (refusing to consider a basis for benefit denial when it was not addressed in the internal review process). However, Defendants were not required to inquire as to whether Plaintiff had applied for or received Social Security benefits during the internal review process because Plaintiff's claim was *denied* - thus the set-off was not applicable. The set-off provision only becomes applicable when or if the court determines that Plaintiff is entitled to long term disability benefits.[8]

No genuine issue of fact exists as to the application of the set-off provision. Under the insurance policy and the employee handbook, clear and unambiguous language requires that long term disability benefits be reduced by the appropriate amount of Social Security authorized or paid. Pursuant to the first step in the *Williams v. BellSouth* multi-step approach, Continental's interpretation of this provision was not "wrong" under the initial *de novo* standard applicable to analyzing ERISA contract provisions. 373 F.3d, 1132, 1138 (11th Cir. 2004); *see Revells v. Metro Life Ins. Co.*, 261 F. Supp. 2d 1359, 1367 (11th Cir. 2003) (holding that "set off provisions

---

[7]Ex. 1, pp. 00046-47.

[8]The court notes that Defendants agreed to pay "own occupation" benefits during settlement negotiations that occurred after this lawsuit was filed.

in disability or pension plans are permissible...."); *Glover v. S. Cent. Bell Tel. Co.*, 644 F.2d 1155, 1159-60 (5th Cir. 1981) ("[t]he contractual agreement that the contractual disability benefits are to be reduced by payments for disability statutorily due to the employee independent of the employer's contractual obligation is not unconscionable or prohibited by law").  Accordingly, the court's inquiry ends here and the set-off provision applies to any long term disability benefits to which Plaintiff may be entitled that relate to the "own occupation time period."  Defendants' Cross-Motion as to this issue is **GRANTED**.

Defendants' Cross-Motion also requests that the court deny Plaintiff's claim for attorney's fees in this case as a matter of law.  In support of this request, Defendants acknowledge that ERISA allows the court discretion in awarding attorney's fees and costs.  *See* 29 U.S.C. § 1132(g)(1).  Defendants set forth a five factor test to consider when deciding a motion for attorney's fees under ERISA.  Those factors are:

1. The degree of the opposing party's culpability or bad faith;

2. The ability of the opposing party to satisfy the award of attorney's fees;

3. Whether an award of an attorney's fees would deter other persons acting under similar circumstances;

4. Whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and,

5. The relative merits of the parties' position.

*Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993).  However, the aforementioned disputed issues of fact regarding Defendants' denial of Plaintiff's claim also

evidence a disputed issue of fact as to whether Defendants exhibited bad faith in denying this claim.  *See e.g., Florence Nightengale Nursing Svcs., Inc. v. Blue Cross & Blue Shield of Alabama*, 41 F.3d 1476, 1485 (11th Cir. 1995), cert. denied, 514 U.S. 1128 (1995) (indicating that an award of attorney's fees under ERISA is not appropriate absent a showing of bad faith); *Andrews v. Employees' Retirement Plan of First Alabama Bancshares, Inc.*, 938 F.2d 1245, 1248 (11th Cir. 1991) (district court's award of attorney's fees reversed solely on the basis of the absence of bad faith.)  A reasonable fact finder might conclude that the denial of benefits in the face of the medical documentation on record constitutes an implausible ground for denying disability and an attempt to disregard ERISA's provisions.  *See Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1120 (11th 1993) (determining that the denial of ERISA benefits was not made in bad faith when defendant insurer "had arguably plausible grounds for denying the claim"); *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566, 1572 (11th Cir. 1985) (finding no evidence of bad faith when tenable grounds to deny the claim existed and defendant made apparent attempts to comply with ERISA); *Curry v. Contract Fabricators, Inc. Profit Sharing Plan* 891 F.2d 842, 849 (11th Cir. 1990) (affirming an award of discretionary attorney's fees when the defendant made misrepresentations to the plaintiff and fraudulently denied benefits).  Defendants' request as to the issue of attorney's fees is, therefore, **DENIED**.

      Defendant finally argues that Plaintiff's benefits under the "any occupation" period are not properly before the court.  Although Defendants concede that Plaintiff would not have to submit a new application for benefits under the "any occupation" standard, they nonetheless argue that they should be given the opportunity to evaluate the claim under this standard since the

only claim Plaintiff made was for benefits under the "own occupation" standard.[9]

The record shows that Plaintiff never attempted to acquire disability benefits under the "any occupation" standard. The Eleventh Circuit has held that "as a general rule plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Perrino v. Southern Bell Telephone & Telegraph Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000); *see also Counts v. American General Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997) (stating that "the law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court"); *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990) (determining that "it is well established law in this Circuit that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court"). The court recognizes that a denial of "own occupation" disability benefits would almost certainly result in a denial of "any occupation" benefits, but Defendants have not conceded (nor has this court found) that Defendants wrongfully denied any "own occupation" benefits. Defendants should have the opportunity to evaluate a claim under the "any occupation" standard in the event the court determines that Plaintiff is due long term disability benefits. Defendants' request to dismiss Plaintiff's claim for "any occupation" disability benefits is **GRANTED**.

## IV. CONCLUSION

In summary, the court finds that Plaintiff's Motion for Summary Judgment is **DENIED** in its entirety. Defendants' Cross Motion for Summary Judgment is **GRANTED in part and**

---

[9]See Ex. A, pp. 150-51, 154-55 for letters denying Plaintiff's claim for benefits under the "own occupation" definition of disability.

**DENIED in part**.  Defendants' request that the set-off provision apply to the payment of long term disability benefits is **GRANTED**.  Defendants' request to dismiss Plaintiff's claim for "any occupation" disability to give Defendants an opportunity to evaluate that claim in the event the court determines Plaintiff is due disability insurance benefits is **GRANTED**.  Defendants' request to deny Plaintiff's claim for attorney fees as a matter of law is **DENIED**.

DONE and ORDERED this 29th day of September, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE